Argued October 15; affirmed November 19, 1946

McMAHON ET AL. *v.* McMAHON ET AL.

(174 P. (2d) 415)

CHARLES W. REDDING, Judge.

*F. Leo Smith,* of Portland, for appellants.

*Joseph Van Hoomissen,* of Portland (Linus M. Fuller, of Portland, on brief), for respondents.

Before BELT, Chief Justice, and KELLY, BAILEY, LUSK, BRAND and HAY, Justices.

KELLY, J.

This is a suit to cancel two deeds. One of these deeds was executed by M. Isabelle McMahon, now deceased, on May 4, 1934, conveying certain real property in Multnomah county to her son, Paul R. McMahon, with a reservation of a life estate in herself. This instrument will be referred to as the questioned deed.

The trial court entered a decree to the effect that plaintiffs have failed to substantiate the allegations of their complaint and that the questioned deed was the free act and deed of the grantor therein absolutely conveying all of the real property therein described to defendant Paul R. McMahon reserving however unto the grantor a life estate therein; and the trial court

gave judgment against plaintiffs for defendants' costs and disbursements. From this decree and judgment and from the trial court's order denying plaintiffs' motion to vacate the same, plaintiffs appeal.

The other deed was executed by Paul R. McMahon, now deceased, on the 18th day of April, 1944, conveying the same premises to Eileen A. McMahon, who is now his widow. The death of the grantor in the first mentioned deed occurred during the month of November, 1935. She died intestate, survived by her following named children: Victor McMahon, Cecilia Wennerholm, Leonita Agnes Kinney, Linus McMahon, J. DeRoo McMahon, Patrick Hubert McMahon, Mary McMahon Garesche and Paul R. McMahon. During the oral argument, we were advised that since this appeal was perfected, J. DeRoo McMahon, one of the plaintiffs and appellants, and Paul R. McMahon, one of the defendants and respondents, have died.

Only four of the above named children were at any time parties, plaintiffs and defendants, to this suit, and, as stated, one of the plaintiffs and one of the defendants died while this appeal was pending. No application has been made for an order substituting the personal representatives or heirs of either of these deceased parties. Three of the four heirs of the grantor in the questioned deed were not parties to this suit. One of these three heirs, who are not parties hereto, Leonita Agnes Kinney testified as a witness for plaintiffs, and Patrick Hubert and Linus McMahon testified as witnesses for defendants. Cecilia Wennerholm was neither a party nor a witness, and there is no record of her presence at the trial.

The outstanding question presented by this record is whether when Mrs. M. Isabelle McMahon executed

the questioned deed, her mental state was such that she understood the nature and effect of executing it and whether she was then acting under the alleged undue influence of the grantor therein.

Upon the question of Mrs. M. Isabelle McMahon's mental state, the testimony is conflicting, but we think that it preponderates in favor of the contention made by defendants to the effect that her mental faculties were in such a state that, when she executed this deed to her youngest son, she fully understood that she was transferring and conveying to him the real property therein described subject to a reservation of a life estate in herself. We are also of the opinion that the grantee did not make any effort to persuade or induce her to execute said deed.

The two plaintiffs and Mrs. Kinney were the heirs of the grantor in the questioned deed who testified in effect that they were of the opinion that their mother was without the requisite mental capacity to execute the deed in question.

Mrs. Dolly McMahon, the wife of plaintiff Victor McMahon, and Mrs. Esther McMahon, widow of the late J. DeRoo McMahon, who at the time of the trial was coplaintiff with his brother Victor, testified similarly, as also did Mrs. Matilda Willman, who was the housekeeper for the grantor and grantee.

The trial of this suit in the circuit court began on May 25, 1945, or more than eleven years after the execution of the deed by the mother to her youngest son. This is said to emphasize the fact that no adverse criticism is intended or warranted because the physicians, who were called by plaintiffs, were unable to remember much that plaintiffs sought to elicit from them as to the mental condition of their mother when

these doctors attended her. One of them testified that she displayed mental deterioration. When asked however,—

"Would you say she was capable of handling her own business transactions?" He answered: "I don't think I could answer that question. I didn't take care of her for that reason. Although some people have mental deterioration, they still are able to take care of their ordinary business."

The other testified that while he was attending her, he performed a successful operation to relieve a strangulated hernia, but as to practically all other questions, he answered: "I do not remember".

Miss Myrtle Skooge, who was in charge of the medical records department of the Emanuel Hospital, referred to such records and testified therefrom that on the 27th of September, 1932, the grantor in the questioned deed was admitted to the hospital at 10:10 a. m., taken to the operating room at 10:30. Next morning, September 28th 1932, at 6:15, it is there noted:

"Patient out of bed, irrational; Miss McKee notified:" and again at 9:00 A. M. September 28th: "Patient still slightly irrational." On the same day, September 28th, from the nurses notes: "Patient out on edge of bed, restless and talking irrationally". Also on Thursday, September 29th, between 9:00 and 10 A. M. "Patient talking irrationally."

Linus McMahon, Patrick Hubert McMahon, and the late defendant Paul R. McMahon, sons of the grantor, and Mrs. Mary McMahon Garesche a daughter, testified that, in their opinion, their mother had the requisite mental capacity to execute the questioned deed. Mrs. Garesche, at the time of its execution, was the wife of Mr. James Tynan, an attorney at law, practicing in

Seattle, Washington, but made visits as frequently as once a month to her sister.

Mrs. Garesche further testified, in effect, that in December, 1933, she had a conversation with both of her parents about disposing of the property in suit, and again at the time of her father's funeral, her mother told her that she wanted to make out a deed for Paul, and asked to what attorney she should go for that purpose. To this question she answered "Well, I guess DeMartini." Mrs. Garesche also testified that at that time she knew that her mother intended to make a deed and that one Sunday Mr. Tynan called Mr. DeMartini on the telephone about the preparation of the deed.

Defendant, Paul R. McMahon, now deceased, testified, in effect, that upon the night before the questioned deed was executed, his mother asked him if he would take her to Mr. DeMartini's office or if he "could get Linus to take her down." At that time, Paul was working for his brother Linus, who was operating a parking lot. Linus had an automobile. Paul had none. The two sons, Linus and Paul, accompanied their mother to Mr. DeMartini's office. Paul further testified, while they were waiting in Mr. DeMartini's office, his mother told him she was going to deed the property to him and that was the first time he knew of it.

Mr. DeMartini, an attorney in good standing, prepared the deed in question and the same was executed by the grantor in his office. At risk of unduly extending this opinion, we venture to quote the following question propounded to Mr. DeMartini and answered by him as follows:

"Q * * * At that time state whether or not in your opinion Mrs. McMahon understood the effect of that deed and that she was executing a deed to

Paul R. McMahon.
   *   *   *
   A  Yes.''

On his direct examination, Mr. DeMartini further testified as follows:

"Q I will ask you if at that time Linus McMahon and Paul R. McMahon made any suggestions to her (referring to Mrs. M. Isabelle McMahon) or gave her any directions or had anything to do with the execution of that deed other than to bring her to your office.
   A  None whatever.''

Plaintiffs cite *Gilliam v. Schoen,* 176 Or. 356, 157 P. (2d) 682; *Ramstead v. Bridges,* 175 Or. 182, 152 P. (2d) 306, and *Miller v. Jeffery,* 129 Or. 674, 278 P. 946. The facts of the case at bar are materially different from those disclosed in the cases so cited; and, we venture to call attention to the following noticeable differences.

In *Gilliam v. Schoen,* supra, the questioned deed was executed by Mrs. Elvira Schoen, who was then 88 years old. In 1880, she and her husband had emigrated from Germany to America, coming to Oregon in 1908. The record did not disclose whether she understood English. The scrivener read the deed to the grantor in English. A letter in the German language was received purporting to have been written by the grantor. The scrivener did not testify.

In *Ramstead v. Bridges,* supra, the questioned deed was executed on August 7, 1943. On September 22, 1943, the grantor was declared insane and committed to the state hospital where he remained at least until the case was heard on appeal in this court.

In *Miller v. Jeffery,* supra, the questioned deed was executed by Mrs. Edna C. Dalton, conveying her prop-

erty to her daughter and her daughter's husband. We quote two sentences from the opinion of this court in that case:

> "Mrs. Dalton's mind, in her then enfeebled condition, was overcome by the importunities of the defendants and her free agency was destroyed by their insistent and persistent demands that she transfer her property to them. * * *
>
> That she did not have sufficient mental capacity to make the deed in question we think is clear from the evidence." (p. 687, ibid.)

In the case at bar, the grantor in the questioned deed is not shown to have lacked the necessary mental capacity to execute it; it is not shown that the grantee ever importuned his mother to execute the deed in question; the grantor was never pronounced insane, she was fully conversant with the English language; at her death, she was only 64 years of age, and, as shown by Mr. DeMartini, the scrivener was selected upon the advice of a wholly disinterested attorney Mr. Tynan; and that the scrivener testified to the grantor's apparent mental capacity to execute the deed in suit.

Being convinced that the record discloses mental capacity and ability to contract on the part of the grantor in the questioned deed when she executed the same and that no undue influence was exerted or attempted by the grantee, Paul R. McMahon, to induce the grantor to execute said deed, it is unnecessary to burden the record with a discussion of the law pertaining to the statute of limitations and defect of parties.

The judgment and decree of the circuit court is affirmed without costs to either party and without prejudice to Cecilia Wennerholm, who is not a party hereto, plaintiff or defendant; has not made an appearance herein, and did not testify as a witness.